IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

**ORIGINS NATURAL
RESOURCES, INC.,**

        Plaintiff,

v.                                    No. CIV 00-1398 BB/RLP

**BEN KOTLER and LDI, L.L.C.,**

        Defendants.

### MEMORANDUM OPINION AND ORDER
### GRANTING DISMISSAL

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss for Lack of Jurisdiction Over the Person and Improper Venue [Doc. #9]. Having fully considered the briefs and arguments of counsel, and being otherwise informed, the Court FINDS the motion well taken and it will be Granted.

### *Discussion*

#### *Facts*

Origins Natural Resources, Inc. ("ONR"), a wholly-owned subsidiary of the Estee Lauder Company, has offered its goods and services under the ORIGINS and ORIGINS NATURAL RESOURCES trademarks nationwide

since 1990. While the base of ONR's business has been primarily cosmetics, it has also sold other items, ranging from apparel to picture frames and sound recordings. The ORIGINS mark has been continuously used on goods to identify ONR or its predecessor in interest, Judith Margolis, who opened her original ONR retail clothing store in Santa Fe in 1976. ORIGINS products are sold nationwide.

In 1999, Defendant Ben Kotler filed a federal application to register for the trademark "NATURAL ORIGINS" for use on clothing. Mr. Kotler licenses this trademark to Defendant LDI, L.L.C., of which Mr. Kotler is an indirect owner.

In October 2000, Plaintiff ONR filed this suit seeking damages and injunctive relief for trademark infringement. The complaint contains no residency or personal jurisdiction allegations but avers "[u]pon information and belief, defendants' clothing is sold over the internet in New Mexico and throughout the country, through the mail order catalog of the Nordstrom store, and at Nordstrom stores." (Compl. at 26). There are no Nordstrom stores in New Mexico. Both LDI and Kotler are California residents.

Defendants filed a motion pursuant to Federal Rule of Civil Procedure 12(b) challenging personal jurisdiction and venue. Plaintiff responds that this

Court has personal jurisdiction based on the trademark infringement which occurred in New Mexico when Plaintiff's investigator accessed Nordstrom's internet web site and ordered a NATURAL ORIGINS item which was shipped to him in New Mexico. The Court permitted discovery limited to jurisdiction.

*Personal Jurisdiction*

A.   *Ben Kotler*

Defendant Ben Kotler filed a declaration stating he is a California resident who has never lived or done business in New Mexico. He also stated he had been in New Mexico on only one occasion, a hot air balloon event totally unrelated to any of the present claims.

Plaintiff's counsel argues that this Court may exercise jurisdiction over Mr. Kotler because he has an ownership interest in, and licensed the NATURAL ORIGINS trademark to, LDI. Plaintiff concludes that since Mr. Kotler would therefore benefit from LDI's alleged trademark infringements in New Mexico, this Court may exercise jurisdiction over him.

While there is law to support the contention that the contacts of an agent or a co-conspirator may be attributed to others for jurisdictional purposes,[1] the

---

[1]   *See, e.g., Wilson v. Wilson-Cook Medical, Inc.*, 720 F. Supp. 533 (M.D.N.C. 1989); *Sparrow v. Goodman*, 376 F. Supp. 1268 (W.D.N.C. 1974).

**present complaint makes no such allegations. Indeed, in response to the Court's questioning, counsel for Plaintiff suggested some undefined type of derivative jurisdiction while expressly denying it sought to pierce the corporate veil or invoke the alter ego doctrine.[2]**

**Plaintiff has the burden of proving that federal jurisdiction exists over both Defendants and that the exercise of personal jurisdiction would not violate due process requirements. *Etienne v. Wolverine Tube, Inc.*, 12 F. Supp. 2d 1173, 1177 (D. Kan. 1998), citing *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996). It has clearly failed to meet this burden with regard to Mr. Kotler.**

**B.     *LDI, L.L.C.***

**LDI manufactures various items of apparel under its NATURAL ORIGINS line. It then sells these items to both Nordstrom and Nordstrom.com. LDI ships the items purchased through the Nordstrom.com web site and catalog to Cedar Rapids, Iowa. The Nordstrom's distribution center in Cedar Rapids then ships**

---

[2] The only law advanced by Plaintiff is *Editorial Musical Latino Americana v. Mar Int'l Records, Inc.*, 829 F. Supp. 62 (S.D.N.Y. 1993). This case is inapplicable as due process limits are not discussed. Moreover, the holding is clearly based on New York's somewhat unusual long-arm statute and the "fiduciary shield" rule. The reasoning and holding also appear contrary to New Mexico law. *See Harrell v. Hayes*, 965 P.2d 933 (N.M. 1998).

them to the customer who purchased the item. Nordstrom's pays LDI wholesale minus three percent for items marketed in this fashion.

In July 2000, just prior to filing this suit, Plaintiff's investigator in New Mexico accessed the Nordstrom's site on the internet and purchased one item. Plaintiff came forward with no other contacts between LDI and New Mexico and asserts this is sufficient to satisfy both the New Mexico long-arm statute and constitutional due process requirements.

    1.    *The Long-Arm Statute*

The New Mexico long-arm statute, NMSA 1978 § 38-1-16 ( 1998 Repl. Pamp.), authorizes the exercise of jurisdiction over one "whether or not a citizen or resident of this state" as to any cause of action arising from: "(1) the transaction of any business within this state [or] (3) the commission of a tortious act within this state...."

Infringement of intellectual property rights sounds in tort for purposes of the long-arm provision pertaining to personal jurisdiction. *Beveridge v. Mid-West Mgt., Inc.*, 78 F. Supp. 2d 739, 744 (N.D. Ill. 1999).[3] Thus, by selling the infringing goods in New Mexico, Defendants allegedly committed a tortious act

---

[3] Since the New Mexico long-arm statute was adopted from the Illinois statute, legal precedent from that state is persuasive. *Melfi v. Goodman*, 368 P.2d 582 (N.M. 1962).

**within the state, subjecting themselves to the personal jurisdiction of this Court.** ***Gleason Works v. Klingelnberg-Oerlikon Geartec Vertriebs-GmbH*, 58 F. Supp. 2d 47, 51-52 (W.D.N.Y. 1999). A single tortious act is sufficient to give rise to jurisdiction under the long-arm statute, even if most of the Defendants' activities occurred elsewhere. *Rose v. Franchetti*, 713 F. Supp. 1203, 1209 (N.D. Ill. 1989), *aff'd*, 979 F.2d 81 (7th Cir. 1992).[4] However, committing a tortious act does not necessarily equate with the purposeful availment required by due process. *Cronin v. Sierra Medical Center*, 10 P.3d 845, 850-51 (N.M. App.), *cert. denied*, 10 P.3d 843 (N.M. 2000).**

## 2. *Due Process*

**Plaintiff also has the burden of demonstrating that Defendants' contacts with this forum are sufficient to meet the requirements of due process. U.S. CONST. amend. XIV; *see International Shoe Co. v. State of Washington*, 326 U.S.**

---

[4] Defendants maintain that since the only New Mexico sale was to Plaintiff's investigator, one "setup" sale is not sufficient. The Court thinks this argument is better analyzed under due process rather than long-arm requirements, but notes substantial authority to support forum jurisdiction when Defendants alleged trademark infringement was merely available to internet subscribers within the forum. *International Star Registry of Illinois v. Bowman-Haight Ventures, Inc.*, No. 98 C 6823, 1999 WL 300285 (N.D. Ill. May 6, 1999); *Editorial Musical Latino Americana*, 829 F. Supp. at 64. *See also* Jason H. Eaton, *Effect of Use, or Alleged Use, of Internet on Personal Jurisdiction In, or Venue of, Federal Court Case*, 155 A.L.R. Fed. 535 §§ 3b, 6 (1999) ("Eaton"). *But see ESAB Group, Inc. v. Centrecut, L.L.C.*, 34 F. Supp. 2d 323 (D.S.C. 1999).

310 (1945); *Beh v. Ostergard*, 657 F. Supp. 173 (D.N.M. 1987).  Personal jurisdiction cannot be sustained unless a defendant has sufficient minimal contact with a forum so as not to offend traditional notions of fair play and substantial justice.  *International Shoe Co.*, 326 U.S. at 316.  The minimum contacts inquiry serves at least two interests.  First, it protects the defendant from having to defend a lawsuit in a jurisdiction where it has no meaningful contacts and therefore may be unfamiliar with both the substantive and procedural law.  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998).  Second, it acts to ensure that the state courts do not reach beyond the limits imposed on them by their status as coequal sovereigns in a federal system.  *Id.* at 1090.  To determine whether minimum contacts have been established, therefore, a court should look at the degree to which a defendant purposefully initiated activity within the state.  *Hanson v. Denckla*, 357 U.S. 235 (1958); *Sanchez v. Church of Scientology*, 857 P.2d 771 (N.M. 1993).  A defendant's conduct and connection with the forum must be such that it should reasonably anticipate being haled into court there.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980).

      Some legal commentators have argued the internet changes commercial contacts in such a radical way that a completely new analytical construct is

necessary to consider the constitutionality of personal jurisdiction based on computer contacts. *See* Leif Swedlow, Note, *Three Paradigms of Presence: A Solution for Personal Jurisdiction on the Internet*, 22 Okla. City L. Rev. 337 (1997); Roger J. Johns, Jr. & Anne Keaty, *Caught in the Web: Websites and Classic Principles of Long-Arm Jurisdiction in Trademark Infringement Cases*, 10 Alb. L.J. Sci. & Tech. 65, 123 (1999) (suggesting ways to reduce net exposure and insurance against the use of litigation in an undesirable forum) ("Johns & Keaty"). Other commentators point out that despite the numerous other technological advances which occurred in the century following *Pennoyer v. Neff*, 95 U.S. 714 (1877), the basic concepts of "fundamental fairness" and "purposeful availment" have adequately protected due process in the face of radical scientific and commercial change. William C. Walter & Deanne M. Mosley, *The Application of Traditional Personal Jurisdiction Jurisprudence to Cyberspace Disputes*, 19 Miss. C.L. Rev. 213 (1998) ("Walter & Mosley"); Gwen M. Kalow, Note, *From the Internet to Court: Exercising Jurisdiction Over World Wide Web Communication*, 65 Ford. L. Rev. 2241, 2242 (1997); Michael S. Rothman, Comment, *It's A Small World After All: Personal Jurisdiction, the Internet and the Global Marketplace*, 23 Md. J. Int'l L. & Trade 127 (1999) ("Rothman"); Timothy Nagy, Comment,

*Personal Jurisdiction and Cyberspace: Establishing Precedent in a Borderless Era*, 6 Comm. Law Conspectus 101 (1998).

Not only history, but common sense supports the latter approach. Certainly, the telegraph, telephone, and fax were each quantum leaps on what is now called "snail mail" (in contrast to electronic or e-mail which is instantaneous). Nonetheless, courts were able to consider whether defendants had adequate contacts to permit a forum to assert jurisdiction within the confines of due process. An internet posting shares attributes of several traditional methods of commerce. It is posted at a web address and to the extent it is not interactive is analogous to magazine or interstate billboard advertising. *See Maritz, Inc. v. Cybergold, Inc.*, 947 F. Supp. 1328 (E.D. Mo. 1996); *Inset Systems, Inc. v. Instruction Set, Inc.*, 937 F. Supp. 161 (D. Conn. 1996); *EDIAS Software Int'l v. BASIS Int'l*, 947 F. Supp. 413 (D. Az. 1996). One difficulty with using this analogy to automatically conclude such advertising is targeted at the forum's internet consumers, however, is that the internet is worldwide and any company advertising on it would be subject to every law of virtually every jurisdiction in the world.[5] *See Osteotech, Inc. v. GenSci Regeneration Sciences, Inc.,* 6 F. Supp. 2d 349,

---

[5] A good example of this problem is provided by Rothman. The author refers to a criminal prosecution of Georgia Tech University for violating the French language purity

356 (D.N.J. 1998); *Hearst Corp. v. Goldberger*, No. 96 CIV 3620 PKL AJP, 1997 WL 97097 (S.D.N.Y. Feb. 26, 1997); Johns & Keaty, 10 Alb. L.J. Sci. & Tech. at 121-23; Walter & Mosley, 19 Miss. C.L. Rev. at 220-21.  It is also founded upon the "stream of commerce" rationale questioned by a plurality of the Supreme Court,  *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 (1987), and legal commentators, Johns & Keaty, 10 Alb. L.J. Sci. & Tech. at 101.

Interactive web sites seem more analogous to the telephone or mail, media with which the courts have substantial experience in applying due process concepts.  *See, e.g., Wesley v. H&D Wireless Ltd. Partnership*, 678 F. Supp. 1540 (D.N.M. 1987); *Rhodes v. Tallarico*, 751 F. Supp. 277 (D. Mass. 1990); *Sears, Roebuck & Co. v. Sears*, 744 F. Supp. 1289 (D. Del. 1990).[6]  Television advertising provides another useful analogue.  *See, e.g., Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829 (11th Cir. 1990); *German Educ. Television Network, Ltd. v. Oregon Pub. Broadcasting Co.*, 569 F. Supp. 1529 (S.D.N.Y. 1983).[7]  Because these instrumentalities, while all distinguishable from the

---

law by advertising its Metz, France, campus on the web in English only.  23 Md. J. Int'l L. & Trade at 131.

[6] Like e-mail, telephone and mail require a specific consumer be targeted.

[7] Television, however, requires specific targeting of a limited geographical territory and is much more finite in terms of duration.

internet in some particular way, each require some conscious interaction or jurisdictional focus, they provide a better standard against which to measure the due process criterion of "purposeful availment" and jurisdictional expectations.

Applying traditional due process analysis to the internet contact in the instant case, informed by New Mexico precedent, this Court must conclude Plaintiff has presently failed to carry its burden of establishing that LDI has purposely availed itself of the benefits and protections of New Mexico law. While LDI must have recognized selling its products through Nordstrom's web page and catalog could result in nationwide, if not worldwide, sales, to date it has resulted in no contact with New Mexico other than Plaintiff's one purchase. Merely advertising from another forum into New Mexico has not been considered constitutionally sufficient. *Salas v. Homestake Enters., Inc.*, 742 P.2d 1049 (N.M. 1987); *Diamond A Cattle Co. v. Broadbent*, 505 P.2d 64 (N.M. 1973); *Wesley v. H&D Wireless Ltd., supra.* See also *Mallinckrodt Med., Inc. v. Sonus Pharms., Inc.*, 989 F. Supp. 265 (D.D.C. 1998) (mere posting on a web site not aimed at district); *Auto Channel, Inc. v. Speedvision Network, LLC*, 995 F. Supp. 761, 765 (W.D. Ky. 1997).

**Since both Kotler and LDI are residents of California who ship their products to Nordstrom's in Seattle and Cedar Rapids, it does not seem likely that, without more, they would readily envision being called to the bar of a New Mexico court to answer for such activities. The Court recognizes that the originator of Plaintiff's label, Judy Margolis, lives in New Mexico and there is some geographic "centrality" here, but neither of these weigh heavily on the scales. Ms. Margolis has already been deposed and in modern travel terms New York to Seattle or Los Angeles is virtually indistinguishable from a similar flight to Albuquerque.  *See Green v. William Mason & Co.*, 996 F. Supp. 394, 396-97 (D.N.J. 1998) (when "air travel brings the two national coasts within hours of each other, state boundaries are less relevant to the determination of fairness"). While, as noted, there is a divergence of judicial opinion on the question of the fundamental fairness of asserting jurisdiction over web sites with only marginal direct contact with a forum,[8] the Court believes California, Washington, Iowa, and perhaps even New York have a better fairness argument than New Mexico. *See Scherr v. Abrahams*, No. 97 C 5453, 1998 WL 299678 (N.D. Ill. May 29, 1998).**

---

[8]  *See* Eaton, 155 ALR Fed. at § 4[a] and [b].  *See also* Walter & Mosley, 19 Miss. C.L. Rev. at 220-27.

12

Based on the present record, due process would be offended by the exercise of jurisdiction over LDI.

## O R D E R

For the above stated reasons, Defendants' motion to dismiss is GRANTED, and this action is DISMISSED without prejudice.

Dated at Albuquerque this 2d day of March, 2001.

**BRUCE D. BLACK**
**United States District Judge**

**Counsel for Plaintiff:**
 Richard Z. Lehv, Patrick T. Perkins, Tamar Niv, New York, NY
 Norman S. Thayer, Jr., Albuquerque, NM

**Counsel for Defendants:**
 Paul Adams, Albuquerque, NM